## J. T. YATES V. STATE.

No. 30,358. May 13, 1959.
Motion for Rehearing Overruled June 17, 1959.

DAVIDSON, Judge, dissented.

*C. A. Droby* and *Robert H. Stinson, Jr.,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *William F. Alexander, Homer G. Montgomery, James M. Williamson, A. D. Jim Bowie,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is murder; the punishment, fifty years.

The deceased, Charles Lolan Hunsaker, also known as Jack Hunsaker, was part owner and operator of the St. George Bar in Downtown Dallas.

On the night of May 29, 1957, a passing motorist heard a shot fired and saw the deceased staggering or running away from appellant, who was standing close by him when the first shot was fired.

The last two shots were fired as the deceased, who was unarmed, lay on his back in the street, appellant standing over him.

Appellant left the scene. He was arrested a few days later and obtained his release by habeas corpus, without having disclosed his identity as the killer.

Several days later he went to the officers, in company with his attorney, and said he had killed Jack Hunsaker and from information given by him the 38 caliber automatic pistol with which the deceased was killed was recovered.

Appellant's version of the killing was that the deceased had made threats to kill him and that, when he approached, the deceased was standing with his hands in his pockets and said "I will kill you and every son-of-a-bitch I can find named Yates," and that he "started out of his pockets with his hands and I came out with the gun and shot him."

Self-defense and communicated threats were submitted to the jury, and rejected.

Two grounds of error are presented in appellant's brief.

E. R. Solomon, testifying for the defense, stated that he heard the deceased say, while in the hospital recovering from a gunshot wound inflicted upon him by appellant on a prior occasion, "the next time I won't miss." (Appellant testified that the deceased had shot at him, on the occasion of the prior difficulty, before he wounded the deceased.)

Solomon testified that he communicated this threat to appellant, and further testified that it was common knowledge between himself, Yates (appellant) and Jack Hunsaker (the deceased) that the deceased Jack Hunsaker was gunning for appellant.

On cross-examination the following occurred which is complained of as the first ground for reversal.

"Q.  And what did Jack (the deceased) tell you, that someone was gunning for him? A.  Yes.

"Q.  Jack told you that someone was gunning for him? A.  He wanted to know * * * *.

Objection: "That's hearsay of the rankest kind." Motion to instruct the jury to disregard the question was overruled, and the cross-examination proceeded.

"Q.  Did Jack tell you who was gunning for him? A.  Well, *he knew who it was and I knew who it was.* He told me that people were * * *."

Objection was renewed as to "what he told him on the telephone" and was overruled.

The witness was then asked "and was that person J. T. Yates?"

Appellant's counsel addressing the court then said "Let's get his full answer on that." The court agreed and had the question read back and counsel for the state added "or was it some other person?"

The witness answered: "He thought it was J. T. Yates," and the court sustained the objection "to what he thought," but overruled the objection and declined to withdraw the testimony as "to what he said."

The witness should not have been permitted to testify as to what the deceased had told him. We note, however, that the witness testified that *he knew* and *the deceased knew* who it was that was "gunning" for the deceased.

The testimony of Solomon, "He knew who it was and I knew who it was" that was "gunning" for the deceased, being before the jury, the overruling of the motion to strike the hearsay evidence would not warrant reversal.

The second ground for reversal relates to the testimony of Cliff Hunsaker, brother of the deceased, on rebuttal to the effect that Solomon, after expressing his sympathy over the death of his brother Jack, said: "I tried to call him and warn him that somebody was trying to kill him."

Solomon had been asked on cross-examination and had denied making such statement to Cliff Hunsaker.

We need not pass upon the question of whether Cliff Hunsaker's testimony as to the statement attributed to Solomon was inadmissible under the hearsay rule. The evidence of Solomon was before the jury that *he knew* and the deceased knew that appellant Yates was "gunning" for the deceased Jack Hunsaker, and that it was common knowledge between them that Jack Hunsaker, the deceased, was "gunning" for appellant Yates.

Solomon testified that he communicated the threat made by the deceased to appellant. Whether Solomon tried unsuccess-

fully to warn the deceased what he already knew added nothing prejudicial to appellant.

The evidence is sufficient to sustain the jury's verdict and we find no reversible error.

The judgment is affirmed.

ON MOTION FOR REHEARING

DAVIDSON, Judge, (dissenting).

My brethren overrule appellant's motion for rehearing without written opinion.

It is my opinion that the affirmance of this conviction does violence to and overturns two rules of law long existing in this state:

The first is the error in holding admissible proof of the hearsay declarations of the deceased prior to the killing evidencing the fact that the appellant was "gunning for him."

From the standpoint of the state the killing was deliberate, unprovoked, and unjustified. From the standpoint of the appellant it was a killing in self-defense against the actual attack and threats of the deceased.

Appellant testified that in 1948, about nine years prior to the killing on May 29, 1957, he was employed at the Alpine Inn, a beer tavern. A difficulty arose between the deceased, Charles Lolan Hunsaker, also known as Jack Hunsaker, and his (deceased's) wife. When Turns, one of the owners of the place, attempted to stop the fight the deceased shot at him. Appellant joined in the difficulty, whereupon deceased shot at him, too. Appellant then shot and injured the deceased.

It was appellant's position, and he introduced evidence to that effect, that from that time on deceased carried a grudge against him and repeatedly uttered threats to others against him which were communicated to him.

To show a communicated threat, the appellant called as a witness, E. R. Solomon, who testified to the effect that after the Alpine-Inn shooting and while deceased was in the hospital following his injury, deceased said to him, in referring to the

shooting, " '* * * the next time I won't miss.' " Solomon said he communicated this threat to the appellant.

Upon cross-examination, the state interrogated the witness as to a conversation he had with Cliff Hunsaker, a brother of the deceased, as follows:

["Q. Now about three weeks after Hunsaker's funeral did you have a conversation with his brother, Cliff Hunsaker?] A. Yes, I did.

["Q. And I believe you expressed your sympathy to him at that time?] A. That's right.

* * *

["Q. Isn't it a fact, Mr. Solomon, that you told Cliff Hunsaker in the same conversation where you expressed your sympathy to him, that you had tried to get hold of Jack by telephone before the killing, to tell him that somebody was gunning for him?] A. No.

["Q. What did you tell him in that regard?] A. I told him I was sorry for what had happened.

["Q. And I'll ask you sir if you didn't also tell him that you had tried to get hold of Jack to warn him that someone was looking for him?] A. No. I didn't call him sir.

["Q. I know you didn't call him but didn't you tell Cliff that you tried to warn Jack?] A. No. Jack called me.

["Q. And *what did Jack tell you, that someone was gunning for him?*] A. Yes.

["Q. Jack told you someone was gunning for him.] A. He wanted to know * *.

* * * *

["Q. Did Jack tell you who was gunning for him?] A. Well, he knew who it was and I knew who it was. He told me that people were * * *.

* * * *

["Q. And was that person J. T. Yates?] * * * A. *He thought it was J. T. Yates.*

* * * *

["Q. In any event he told you someone was gunning for him.] A. Yes sir."

Appellant's objection to such testimony as being hearsay was overruled.

I am convinced that the receipt of such testimony constituted reversible error.

The practical effect of the testimony was to place before the jury the fact that prior to the killing the deceased had told the witness that "someone was gunning for him," and that both the witness and the deceased knew to whom the "someone" had reference, and that the deceased thought it was the appellant —all this being out of the presence and hearing of the appellant.

That such testimony was subject to the objection urged is, to me, apparent.

The case of Murphy v. State, 40 S.W. 978, is directly in point. There the appellant sought to prove that prior to the killing the deceased had made the statement that his life had been threatened by several men, that he had to carry arms to protect himself, and that the men threatening him were dangerous. It was there held that the testimony was properly rejected as being hearsay.

Here, in effect, the state proved the very thing that the accused in the Murphy case sought to prove and was denied— which was that, here, the deceased had made the statements that "someone was gunning for him * * * he knew who it was * * * and * * * He thought it was J. T. Yates."

The Murphy case was cited with approval in Woodard v. State, 51 S.W. 1122. In that case the state introduced in evidence a conversation the deceased had with his wife, prior to the killing, as to his carrying a pistol at the time of the homicide because of an anticipated difficulty with someone. Such testimony was held to be inadmissible as being hearsay.

Woodard v. State, 42 Texas Cr. Rep. 188, 58 S.W. 135, is also in point. See, also, 18 Texas Jur., Sec. 59, p. 121.

The case of Hoyle v. State, 153 Texas Cr. Rep. 548, 223 S.W. 2d 231, also holds that testimony of such nature was not admissible. In that case the conviction was for the murder by appellant of his wife. The defense was that he was justified in his act. The opinion does not further elaborate upon that defense. The state introduced in evidence a divorce petition filed

by the deceased against Hoyle, in which it was alleged that he had threatened to kill her. The receipt of such evidence was held to be error.

The contention of the state in that case was that, inasmuch as Hoyle had first gone into the fact that a divorce suit had been filed, the introduction of the petition was authorized. If the state could not prove the statement of the deceased made in the divorce proceeding that her life had been threatened by her husband, neither could the state have proven such fact by some person to whom the deceased might have made such statement.

The analogy between the Hoyle case and the instant case is therefore apparent.

In addition, and as showing the second error, in the instant case, the state did not stop with the introduction of the hearsay evidence above mentioned but, in following the predicate it had laid as to the conversation between the witness Solomon and Cliff Hunsaker, the deceased's brother, three weeks subsequent to the funeral, the state proved by the witness Cliff Hunsaker that at that time the witness Solomon said to him:

" 'I tried to call him [the deceased] and warn him that somebody was trying to kill him.' "

Because the witness Solomon denied making such statement, the state was permitted to impeach a material witness for the appellant upon an immaterial matter.

Whether Solomon had or had not tried to call or reach the deceased prior to the killing to tell him that somebody was "gunning for him" or was going to kill him was immaterial to any issue in the case.

Not only was the testimony of the witness Hunsaker inadmissible as impeaching the witness Solomon but, in addition thereto, such testimony tended strongly to suggest—in the light of the other and inadmissible testimony of the witness—that the appellant was in fact "gunning" for the deceased and the witness Solomon knew it.

The controlling rule of law is stated in Branch's P.C., Vol. 1. p. 220, Sec. 198, as follows:

"* * * If the State seeks to draw out new matter from a defense witness on cross-examination and fails to elicit the desired answer, it is error to allow the State to impeach such witness by proof of the desired facts by other witnesses, and thus get before the jury hearsay evidence which took place outside of the defendant's presence."

See, also, Corley v. State, 160 Texas Cr. Rep. 504, 272 S.W. 2d 354.

For the errors pointed out, the judgment ought to be reversed and the cause remanded.

I respectfully dissent.